## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT UNROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 CV 0597 |
| | ) | |
| ARMOR CORRECTIONAL HEALTH | ) | Judge John J. Tharp, Jr. |
| SERVICES, INC., DR. ALVARO | ) | |
| ENCINAS, LAKE COUNTY, | ) | |
| ILLINOIS, LAKE COUNTY | ) | |
| SHERIFF'S OFFICE, MARK C. | ) | |
| CURRAN, JOHN IDLEBURG, DAVE | ) | |
| WATHEN, CHARLES CROCKETT, | ) | |
| and DOES 1 through 11, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The defendants' motion to dismiss claims against Lake County, Lake County Sheriff's Office, John Idleburg, Dave Wathen, and Charles Crockett [104] is denied in part and granted in part. The claims against Wathen and Crockett in their individual capacities are dismissed with prejudice. The remaining claims may go forward. See Statement for further details. A status hearing will be held in Courtroom 2303 on Wednesday, July 19, 2023 at 9:45 a.m.

## STATEMENT

Plaintiff Robert Unroe brought this action alleging that defendants Armor Correctional Health Services, Inc. (Armor), Dr. Alvaro Encinas, Lake County, Lake County Sheriff's Office (LCSO), Sheriff John Idleburg, Sheriff Mark Curran, Chief Dave Wathen, Deputy Chief Charles Crockett, and Does 1 through 11 unlawfully deprived him of his rights to receive medical care for an umbilical hernia he suffered while in pre-trial detention at Lake County Jail. *See* First Am. Compl. (FAC), ECF No. 47.[1] On March 31, 2022, after defendants Lake County, LCSO, Idleburg, Wathen, and Crockett moved to dismiss the claims against them, the Court granted their motion, dismissing the claims without prejudice with leave to amend. Dismissal Order, ECF No. 92. Unroe has since filed a second amended complaint. Second Am. Compl. (SAC), ECF No. 97. Defendants Lake County, LCSO, Idleburg, Wathen, and Crockett again move to dismiss. Second Mot. Dismiss, ECF No. 104. For the following reasons, that motion is granted in part and denied in part.

---

[1] According to Unroe, defendants Curran, Wathen, and Crockett have since left the employment positions they once occupied with the LCSO. FAC ¶¶ 10, 12-13.

The basic fact allegations on which the plaintiff's claims are based are set forth in the Court's ruling on the first motion to dismiss and will not be repeated here except as necessary in the context of evaluating the parties' respective arguments. In brief, Unroe alleges that he suffered from an umbilical hernia while detained in the Lake County Jail for approximately three years without receiving necessary surgery and experienced great pain and discomfort as a result.

Pretrial detainees may assert a claim for denial of medical care under section 1983 predicated on the rights secured by the Due Process Clause of the Fourteenth Amendment—such claims are subject to an objective reasonableness standard. *See Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). To prevail under this standard, the detainee must first show that the defendants "acted purposefully, knowingly, or recklessly when considering the consequence of [their] response to the medical condition at issue," and then demonstrate that "the challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances." *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020) (citing *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018)). In addition to asserting claims against individual defendants for discrete acts of denial of reasonable care, a plaintiff may posit that systemic deficiencies caused a deprivation of such care. *See Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 554 (7th Cir. 2016). Often, the former type of claim takes the form of an individual-capacity suit against jail employees and officials, including supervisors, alleging that they acted with a culpable state of mind regarding the detainee's medical needs, while the latter takes the form of a *Monell* suit against the Sheriff's office alleging that it had maintained policies—explicit or implicit—which deprived persons of their federal rights to adequate medical care. *See, e.g.*, *Miranda*, 900 F.3d at 344. An individual officer with final policymaking authority, however, may also be individually liable for setting policy that, "when enforced, causes a constitutional violation." *Childress v. Walker*, 787 F.3d 433, 440 (7th Cir. 2015) (citation omitted).

In the FAC, Unroe alleged that Lake County, LCSO, Mark Curran, John Idleburg, and Dave Wathen acted with deliberate indifference to his pain and suffering by failing to properly schedule his hernia surgery, to inform him of the date of the surgery in advance, and to promptly reschedule the surgery. FAC ¶¶ 47-63. He asserted that they knew about the seriousness of his condition and the inadequacy of his care because of the inherent visibility of his condition and his complaints and formal grievances. *Id.* ¶¶ 36-40, 49-50. Further, Unroe alleged that it was the official municipal policy to deny or delay necessary medical care to save money, which resulted in the deprivation of his rights. He supported that allegation by asserting that Armor physician Dr. Encinas told him that the cost-saving policy made it impossible to reschedule Unroe's surgery. *Id.* ¶¶ 32, 41-42.

In its Order granting the first motion to dismiss, the Court found that the mere fact that Unroe filed formal grievances did not provide a sufficient factual basis to plausibly attribute supervisory liability to the named LCSO officers. Dismissal Order 3-4. The Court further found that the County could not be held liable for official acts of the LCSO—an independently elected office not subject to the County's control—but left open the opportunity for Unroe to name the County as a defendant for indemnification purposes. *Id.* at 4. Last, with respect to the claims against LCSO itself, the Court held that mere allegations that a cost-saving policy existed, while acknowledged by Dr. Encinas, did not establish a sufficient factual basis that LCSO knew of such policy by Armor or implicitly shared it. *Id.* at 4-5.

In the SAC, Unroe now: (1) omits any claim against former Sheriff Curran, (2) adds Lake County as a defendant for indemnification purposes, and (3) reiterates his previous allegations against the LCSO, its officers, and its employees, including against Idleburg, Wathen, and Crocket in their official and individual capacities, for unreasonably withholding timely treatment and for instituting systemic policies that resulted in the provision of inadequate medical care to the detainees. SAC. Lake County, LCSO, Idleburg, Wathen, and Crockett again move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Second Mot. Dismiss. Accepting all well-pleaded facts in the SAC as true and drawing all reasonable inferences in Unroe's favor, *see Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015), the Court finds the SAC plausibly states a claim for relief against LCSO and Idleburg in his individual capacity. The Court, however, dismisses the individual-capacity claims against Wathen and Crockett. Accordingly, Unroe's claims against LCSO, claims against Idleburg in his individual capacity, and the indemnification claim against Lake County will proceed.

### A.    LCSO and LCSO Officers in their Official Capacities

As an initial matter, and as previously stated, the SAC brings claims against Idleburg, Wathen, and Crockett (collectively, hereafter, "the LCSO Officers" or "Officers") in their official capacities as well as the LCSO itself. SAC ¶¶ 10-12. An official capacity suit against an officer is essentially a suit against an entity of which the officer is an agent. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). There is, thus, little difference between naming the Officers in their official capacities as defendants and naming the LCSO itself as a defendant. *See Tyson v. Cook County*, 539 F. Supp. 3d 924, 927 (N.D. Ill. 2021).

The defendants argue that these claims, often referred to as *Monell* claims, must fail. *See Monell v. Dep't of Soc. Servs. of City of N.Y*, 436 U.S. 658 (1978). To be liable as a county agency, LCSO must have promulgated some policy that was "responsible for deprivation of rights protected by the Constitution." *Id.* at 690. The alleged policy may take the shape "of an official policy, widespread custom, or action by an official with policymaking authority." *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016) (quoting *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016)). Regardless of the form of the policy—explicit or implicit—for a municipality to be liable for promulgating the policy, the alleged policy must directly cause the deprivation of federal rights. *Gonzalez v. McHenry County*, 40 F.4th 824, 829 (7th Cir. 2022). At the motion to dismiss stage, a plaintiff's *Monell* claim need not meet a heightened pleading standard. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). However, the plaintiff must still "provide some specific facts to support the legal claims asserted in the complaint." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted). Thus, a simple "recitation of the elements of a *Monell* claim," absent additional facts, is not sufficient to survive a motion to dismiss. *Elsayed v. Village of Schaumburg*, No. 14 C 8387, 2015 WL 1433071, at *5 (N.D. Ill. Mar. 26, 2015).

Unroe alleges the following facts in support of his claim that LCSO had a policy of delaying care to save costs, and that the policy caused his medical care to be inadequate. He suffered from a highly visible condition and upon his intake informed the medical personnel that he had previously undergone emergency surgery for that condition. SAC ¶¶ 18-19. Despite his repeated requests for medical treatment, the staff at Armor did not schedule his surgery for over a year and took no steps to manage his pain. *Id.* ¶¶ 20-22. When the surgery was finally scheduled, Unroe was not informed of the date of surgery, and, consequently, failed to fast as required, prompting

the need to reschedule the surgery. *Id.* ¶¶ 27-29. Then, despite Unroe's repeated grievances and request forms, the surgery was not rescheduled for another two years. *Id.* ¶¶ 30-32, 47-50. At some point, an Armor physician, Dr. Encinas, told him that his surgery would not be rescheduled due to "Armor's policies, Lake County Jail's policies, and the expense involved." *Id.* ¶ 33. In addition, Unroe now asserts that Lake County "work[ed] in concert with Armor . . . to delay treatments for pretrial detainees with the intention that any direct or indirect costs be absorbed by [the Illinois Department of Corrections]." SAC ¶ 35, *see also id.* ¶¶ 44, 63, 75. Importantly, Unroe's SAC reasserts the allegation that Dr. Encinas communicated to Unroe that his surgery would not be rescheduled due not only to Armor's policies but also Lake County Jail's policies. *Id.* ¶ 33.

The defendants argue that to state a plausible *Monell* claim, Unroe must make factual allegations beyond those directly experienced by Unroe himself. Second Mot. Dismiss 4. Yet, "the Seventh Circuit recently indicated that at the motion to dismiss stage, a plaintiff may rely solely on his own experience to state a *Monell* claim rather than having to plead examples of other individuals' experiences." *Zavala v. Damon*, No. 17 C 3042, 2018 WL 3438945, at *3 (N.D. Ill. July 17, 2018) (citing *White*, 829 F.3d at 844); *see also Williams v. City of Chicago*, No. 16-CV-8271, 2017 WL 3169065, at *9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims similarly have "scotched motions to dismiss" premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff.") (citation omitted); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("[I]t is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience."). Rather, "[i]n determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Nicholson v. Kramer*, No. 18-CV-3274, 2021 WL 3367168, at *6 (N.D. Ill. Aug. 2, 2021) (citing *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018)). To be sure, a plaintiff still carries the burden of alleging specific facts giving rise to a plausible claim, but, as the Seventh Circuit has explained, a rule stating that no set of facts arising exclusively from the plaintiff's own experiences is sufficient to state a claim—no matter how indicative these experiences are of the existence of a policy or widespread practice—would raise the bar too high for the plaintiff to overcome at this early stage of litigation. As such, it is possible for Unroe to state a plausible claim for relief on a theory that the LCSO instituted an unconstitutional policy depriving him of his constitutional rights without including allegations outside his own experience.

The Court, therefore, considers whether the circumstances surrounding Unroe's injury and the additional facts he alleges are, in fact, sufficient to state a *Monell* claim against the LCSO. In *Nicholson*, the court dealt with allegations similar to those here: the plaintiff maintained that he was denied additional treatment for a prolonged period of time, despite his grievances and the visibility of his condition, and asserted that his denial of care was a result of Kane County Sheriff's Office's official policy. No. 18-CV-3274, 2021 WL 3367168, at *1-2. Applying the aforementioned standard, the court determined that the circumstances surrounding the alleged injury alone "plausibly suggest[ed] that his injury was caused by a policy or widespread practice, rather than the isolated decisions of particular Jail employees." *Id.* at *6. Here, Unroe not only alleges that he experienced two protracted periods in which his surgery was not scheduled, during which he also filed multiple grievances, but he also alleges that an Armor doctor specifically told him that a policy of delay existed and was shared by the Lake County Jail.

4

In response, the defendants appear to suggest that this statement from Dr. Encinas, as an assertion made by a non-jail employee, cannot alone establish that a ***jail*** policy was in place. *See* Reply 1-2, ECF No. 110 (emphasis added). To the extent that the defendants are arguing that Dr. Encinas's statement is not competent evidence that the LCSO had such a policy, it is misplaced, as there is no requirement to plead evidence in a complaint. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The defendants' argument is in any event also unfounded because the Court must draw all reasonable inferences in Unroe's favor, *see Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020) (citation omitted), and it is reasonable to infer that an individual performing contractual medical services for a jail would be aware of the negotiated-upon policies between the jail and the medical provider. As a rule, Lake County's contractual relationship with Armor for its medical services does not insulate Lake County from liability when such care is inadequate. *See Daniel*, 833 F.3d at 737 ("A government entity cannot shield itself from § 1983 liability by contracting out its duty to provide medical services.") (citation omitted). Moreover, it is the circumstances of Unroe's alleged deprivation, such as the length of time during which he experienced pain without being scheduled for surgery, that supply the core of Unroe's claim that a jail policy existed, to which Dr. Encinas's statement only provides further support. *See, e.g.*, *Simmons v. Godinez*, No. 16 C 4501, 2017 WL 3568408, at *4 (N.D. Ill. Aug. 16, 2017) ("The statement . . . ***further supports*** Plaintiff's allegation that he suffered from undiagnosed back pain for more than two years because [of] cost-cutting measures . . .") (emphasis added). Last, the existence of an alleged policy is at least marginally bolstered by the presence of direct incentives for pre-trial detention facilities to delay treatment, and to see—as Unroe alleges—that "direct or indirect costs be absorbed by [Illinois Department of Corrections]." SAC ¶ 35.

As pointed out in *Simmons*, where courts have granted motions to dismiss *Monell* claims, "this has typically been where plaintiffs have failed to tie the alleged policy to their particular injury or have failed to provide any facts beyond a bare assertion that the policy exists." No. 16 C 4501, 2017 WL 3568408, at *4. Here, Unroe ties an alleged jail policy of systematic delays in medical care to the particular injury that he had allegedly suffered as a result of such delays, and he provides facts suggestive of the existence of such policy, including but not limited to Dr. Encinas's statement. Accordingly, Unroe states a plausible claim for relief, and the defendants' motion to dismiss the *Monell* claim against the LCSO is denied.

### B.      LCSO Officers in their Individual Capacities

The defendants next argue that Unroe fails to state plausible claims against LCSO Officers Idleburg, Wathen, and Crockett. In addition to the official capacity claims against the Officers, Unroe sues them in their individual capacities for their alleged indifference toward his objectively serious medical need.  SAC ¶ 54.  As the defendants argue, Unroe cannot, however, prevail in an individual suit against those defendants—who are supervisors—by merely pointing out that ***some*** jail employees' actions were unreasonable. Individual liability in § 1983 cases depends on each officer's specific knowledge and actions, not on the knowledge or actions of persons they supervise. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997) (holding that "to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct."); *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022) (holding that plaintiff "must show more than negligence" in hiring and retention of personnel on part of the supervisor to impose supervisory liability). Further, when detainees are under the care of a medical team, the "non-medical jail staff may generally

5

trust the professionals to provide appropriate medical attention," and, as such, jail officials may be found liable only if they have "reason to know that their medical staff were failing to treat or inadequately treating an inmate." *Miranda*, 900 F.3d at 343. Thus, Unroe must allege some basis to permit an inference that the Officers were personally involved in acts constituting an objectively unreasonable denial of medical care to him, such as, for instance, deliberately delaying medical appointments or recklessly failing to advise Unroe that he need to fast the night before his scheduled surgery.

The Court's previous Dismissal Order found Unroe to have inadequately asserted claims against the Officers in their personal capacities. Dismissal Order 3-4. Accepting as true Unroe's allegations that he filed grievances, the Court noted that the filing of grievances alone does not permit an inference that jail supervisors knew of or had reason to know of Unroe's inadequate care. *Id*. In his SAC, Unroe does not cure those deficiencies. For instance, Unroe asserts that the Officers' failure to act in response to his filed grievances was "either knowing or due to willful indifference." SAC ¶ 31; *see also id*. ¶ 41 ("Through the grievances filed by Unroe, Lake County Jail staff and administration knew or should have known that Unroe had a serious medical need that was not being met."). Further, he alleges that the decision of the Officers to not notify Unroe of the scheduled surgery was an "affirmative decision that was knowing, and had the result of overriding the requirements of the NorthShore Medical Group's staff." *Id*. ¶ 29. But Unroe's allegations regarding the Officers' knowledge are conclusory, supported only by the fact that he filed grievances. Nowhere does Unroe allege whether or how any of the named LCSO Officers had particular knowledge of his grievances, his surgery date, or his fasting requirements. The SAC thereby repeats the factual assertions of the FAC, merely supplementing them with conclusory statements. To state a plausible claim against the named Officers in their individual capacities, Unroe must allege some personal involvement on their behalf outside of the grievance process. *See Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012); *see also Thomas v. Chmell*, 569 F. Supp. 3d 732, 738 (N.D. Ill. 2021) (declining to hold prison officials individually liable solely on the grounds that they had not responded properly to filed grievances). Here, not only does Unroe fail to identify how any of the LCSO Officers were personally involved in Unroe's care beyond reviewing his grievances, as required by the standard, but he also does not allege that any of these Officers were responsible for regular review of such grievances in the first place.

In addition to claiming that the LCSO Officers knew specifically of Unroe's medical needs and ignored them, the SAC alleges that the Officers had knowledge of and carried out unconstitutional official policies. SAC ¶¶ 57, 59, 61. Even though the complaint plausibly alleges that an unconstitutional policy was responsible for Unroe's injury, when it comes to individual-capacity claims against the LCSO Officers, an "assertion of a policy or practice, or of inaction in a general sense" alone does not "add up to the kind of personal involvement require[d] for individual liability in § 1983 cases." *Hernandez v. City of Chicago*, No. 99 C 6441, 2001 WL 128246, at *7 (N.D. Ill. Feb. 9, 2001) (quoting *Luck v. Rovenstine*, 168 F.3d 323, 327 (7th Cir. 1999)). A supervisor may be individually liable for an unconstitutional policy, but only if there is sufficient evidence that he or she "personally devised a deliberately indifferent policy that caused a constitutional injury." *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998); *see also Childress*, 787 F.3d at 440 ("In the case of those responsible for setting policy, liability will result from the institution of a policy that, when enforced, causes a constitutional deprivation.") (citation omitted); *Turner v. Cook Cnty. Sheriff's Office*, 2020 WL 1166186, at *5 (N.D. Ill. Mar. 11, 2020) (allowing individual-capacity claim against a Sheriff to proceed where the claim was "rooted in

his alleged failure to implement policies that provide constitutionally adequate healthcare to detainees suffering from drug addiction and overdose.").

In his SAC, Unroe alleges that only Idleburg was personally responsible for making the ultimate policy decisions regarding detainees' medical care. *Compare* SAC ¶ 57 ("Defendant Idleburg's . . . knowledge and acts of implementation were in his capacity as final policymaker for the Lake County Sheriff's Office) *with id.* ¶ 60 ("Defendant Wathen was responsible for ensuring that detainees at the Lake County Jail, including Unroe, received constitutionally adequate medical care according to Defendant Idleburg's policy decisions . . ."); *see also* ¶ 62 ("Defendant Crockett was responsible for ensuring that detainees at the Lake County Jail, including Unroe, received constitutionally adequate medical care according to Defendant Idleburg's policy decisions . . ."). It is plausible that as a final policymaker for Lake County Jail, Idleburg knew of and was personally involved with devising the alleged unconstitutional policy. As such, the individual-capacity claim against Idleburg may proceed. *See Lamb v. County of Lake*, No. 1:20-CV-03592, 2021 WL 4306144, at *5 (N.D. Ill. Sept. 22, 2021). On the other hand, because the SAC does not include sufficient facts plausibly alleging that Wathen or Crockett participated in devising a policy that caused constitutional deprivation or were personally involved in conduct that was objectively unreasonable toward Unroe's medical needs, the individual-capacity claims against them are dismissed.

### C.    Lake County

Finally, in the SAC, Unroe names Lake County as a defendant for indemnification purposes for actions taken by LCSO or LCSO Officers within the scope of their employment. SAC ¶¶ 86-88. The defendants' motion to dismiss the indemnification claim hinges on the dismissal of other claims against the LCSO and LCSO Officers. Second Mot. Dismiss 8 ("[S]tatutory indemnification . . . requires Counts I and II to state some claim against one or more of the Sheriff Defendants. Because [they] do not do so, there is nothing (and no one) for the County to indemnify."). Since the *Monell* claim against LCSO as well as the individual capacity claim against Idleburg remain, and the County is obligated to pay any judgment entered against the LCSO or Idleburg when acting in the scope of his employment, the motion to dismiss the indemnification claim against the County is denied. *See Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003); 745 Ill. Comp. Stat. 10/9-102.

Dated: July 10, 2023

*John J. Tharp, Jr.*

John J. Tharp, Jr.
United States District Judge

7